**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

July 14, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:   *Jasmine M. v. Frank Bisignano, Social Security Administration*
      Civil No. 1:25-cv-03291-JMC

Dear Counsel:

Jasmine McCalla ("Plaintiff") petitioned this Court on October 3, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claim for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in the case as well as the parties' dispositive filings. (ECF Nos. 12, 13, 16). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

## I.      Procedural Background

Plaintiff filed her application for SSI on August 4, 2022, alleging that she became disabled on June 1, 2022. (Tr. 411-421).[1] The SSA initially denied Plaintiff's application on May 2, 2024 and upon reconsideration on September 18, 2024. *Id.* at 61; 115. On September 24, 2024, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 120. On June 5, 2025, ALJ Gary Ball held a telephonic hearing. *See id.* at 14-34. On July 11, 2025, the ALJ rendered a decision denying Plaintiff's claim. *Id.* Plaintiff filed a request for review on July 22, 2025, and on August 27, 2025, the ALJ's decision became final when the Appeals Council affirmed it. *Id.* at 188-89; 1-6.

## II.     The ALJ's and Appeals Council's Decisions

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

sequential evaluation of disability set forth in the Secretary's regulations.  20 C.F.R. § 416.920.
"To summarize, the ALJ asks at step one whether the claimant has been working; at step two,
whether the claimant's medical impairments meet the regulations' severity and duration
requirements; at step three, whether the medical impairments meet or equal an impairment listed
in the regulations; at step four, whether the claimant can perform her past work given the
limitations caused by her medical impairments; and at step five, whether the claimant can perform
other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).  If the first three steps do
not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the
most' the claimant 'can still do despite' physical and mental limitations that affect her ability to
work[,]" by considering all of the claimant's medically determinable impairments regardless of
severity.  *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof
through the first four steps of the sequential evaluation.  If the claimant makes the requisite
showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other
work that exists in significant numbers in the national economy, considering the claimant's
residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d
858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged
in substantial gainful activity "since August 4, 2022, the application date." (Tr. 19).  At step two,
they determined that Plaintiff suffered from the following severe impairments: "major depressive
disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), obesity, diabetes
mellitus." *Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or
combination of impairments do not meet or equal one of the listed impairments in the regulations.
*Id.* at 20; 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments
met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's
RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined
> in 20 CFR 416.967(b) except Limited to understanding and carrying out simple
> instructions. The claimant can use judgment to make simple work-related decisions.
> The claimant can have no work at a specific production-rate pace, as in an assembly
> line or where work requires hourly quotas. The claimant is limited to work requiring
> only occasional changes in the routine work setting. The claimant is limited to
> occasional interaction with the public.

*Id.* at 22. In limiting the Plaintiff to "no work at a specific production-rate pace, as in an assembly
line or where work requires hourly quotas," the ALJ relied on a hypothetical posed to a vocational
expert (the "VE"). *See id.* at 56.  That hypothetical provided that Plaintiff could perform "no work
of a specific production rate pace such as an assembly line or work that requires hourly quotas."
*Id.*  That testimony is as follows:

Q: And, Ms. Levine, I want you to assume the Claimant has no past relevant work

for you to consider, okay?

A: Yes.

Q: And I want you to assume a hypothetical individual with the Claimant's education, and again, with no past work for you to consider. The individual would be limited to jobs at the medium exertional level. They would be limited to understanding and carrying out simply instructions.

Can use judgment to make simple/work-related decisions and there would be no work of a specific production rate pace such as an assembly line or work that requires hourly quotas and be limited to work requiring only occasional changes in the routing work setting. Given those limitations, would there be any work in the national economy for that hypothetical individual, and if so, could you give me two examples with numbers of jobs and light jobs will work or medium, either one?

*Id.* (emphasis added). The ALJ found that the Plaintiff did not have any past relevant work. *Id.* at 29. Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that there exist jobs in significant numbers in the national economy that the Plaintiff can perform, such as a marker, with 165,000 jobs in the national economy, a router with 22,000 jobs in the national economy, or a housekeeper with 175,000 jobs in the national economy. *Id.* at 29-30. Thus, the ALJ determined that the Plaintiff had not been under disability since the date she filed her application. *Id.*

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision warrants remand because the ALJ posed an inadequate hypothetical to the VE, on which the VE improperly relied. (ECF No. 12 at 7). For the reasons that follow, the Court agrees. As such, I will remand the case.

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. §

416.945(b)–(c)).  The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC.  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work."  *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted).  As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it."  *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311).  Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion."  *Id.* at 388 (cleaned up).  The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188.  A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."  *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

It is true that a definition for "specific production-rate pace" is not provided within Social Security Regulations, the Dictionary of Occupational Titles, or the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles.  *See, e.g.*, *Ursula G. v. Comm'r. Soc. Sec. Amin.*, Civil No. SAG-18-1841 (D. Md. May 23, 2019) ("[W]hile the phrase production rate pace is used in an appendix to the DOT, a definition is not provided.") (citing U.S. Dep't of Labor, Dictionary of Occupational Titles, App. C (4th ed. 1991)).  Thus, undefined references to a production pace may warrant remand.  *See id.*  For example in *Perry v. Berryhill*, the Fourth Circuit reversed and remanded a case when "the ALJ's reference to a 'non-production oriented work setting'" was not properly explained.  *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019). There, the hypothetical made it "difficult, if not impossible, to evaluate whether restricting [the claimant] to a 'non-production oriented work setting' properly accounted for [his] well-documented limitations in concentration, persistence, or pace."  *Id.*  The *Perry* court compared that hypothetical to one posed in *Sizemore v. Berryhill*, reasoning

> the ALJ in *Sizemore* provided additional context, explaining that the claimant could perform work only in a "low stress" setting, without any "fast-paced work" or "public contact," to account for moderate limitations in concentration, persistence, or pace; those "descriptors helped to explain the restriction intended by the ALJ, and allowed [the Fourth Circuit] to evaluate whether that restriction adequately accounted for the claimant's limitations."

4

*Id.* at n.1 (citing *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). In *Amy F. v. Bisignano*, this Court similarly concluded that the ALJ erred when he used an undefined "no fast-paced production" limitation in a hypothetical posed to a vocational expert. *Amy F. v. Bisignano*, Civil No. 24-2192-DRM, 2025 WL 2062616 (D. Md. July 22, 2025).

In contrast, this Court has upheld references to fast paced production work when properly explained in context. *See, e.g.*, *Stacie R. v. Dudek*, Civil No. 24-0474-CDA, 2025 WL 948376, at *4 (D. Md. March 28, 2025) (indicating "the 'high-quota production-rate pace' limitation adequately addresses Plaintiff's moderate CPP limitation" when the plaintiff was restricted to "positions that do not require a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)"); *Briana H. v. O'Malley*, Civil No. 23-1288-CDA, 2024 WL 4349836, at *6 (D. Md. Sept. 30, 2024) (finding that a restriction indicating the claimant "could perform simple, routine, and repetitive tasks in a low-stress work environment with low-stress defined as no strict production quotas" did not frustrate meaningful review); *Jackie W. v. Comm., Soc. Sec. Admin.*, Civil No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (noting that even though the ALJ did not include the term "assembly-line work" in her RFC determination, the inclusion of it in the hypothetical posed to a vocational expert was "provide[d] enough clarity for this Court's review"). Commissioner's argument that this hypothetical has been properly explained in context is foreclosed by recent opinions in this Court. *E.g.*, *Al-Nissa J. v. Bisignano*, Civil No. 25-1593-DRM, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026) (discussing *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025)).

In *Linger v. Comm'r of Soc. Sec.*, the Fourth Circuit recognized that a similar phrase, "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description of a limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5.

This Court's recent decision in *Al-Nissa J. v. Bisignano* offers guidance. *Al-Nissa J. v. Bisignano*, 2026 WL 1088433, at *4. There, the ALJ limited a plaintiff to tasks that do not involve a "specific production rate pace, such as assembly line work or an hourly production quota." *Id.* at *3. The Court reasoned that this limitation is analogous to the impermissible *Thomas*, *Perry*, and *Linger* hypotheticals because they were not clear enough to afford meaningful judicial review. *Id.* at *4. The Court noted that the *Linger* reasoning is "persuasive in elucidating the holding of *Thomas* for situations where ALJs provide examples such as assembly line work or time- or piece-based quotas." *Id.* The Court noted several other recent examples in which this Court has remanded similarly deficient hypotheticals. *E.g.*, *Jason M. v. Bisignano*, No. DRM-25-0358, 2026 WL 523879, at *4 (D. Md. Feb. 25, 2026) (finding inadequate a limitation to tasks not involving "specific rate production, such as assembly line work or work that requires hourly quotas"); *Chad H. v. Bisignano*, No. DRM-25-0380, 2026 WL 483338, at *3-*5 (D. Md. Feb. 20, 2026) (finding inadequate a limitation to tasks not involving "specific production rates").

This Court has repeatedly held that examples like the ALJ's here "such as on an assembly

5

line or hourly production quotas," "fail to clarify the term's meaning for the same reason that the examples "such as assembly line work or piecemeal quotas" failed in *Linger*. *Cassandra T. v. Bisignano*, Civil No. 25-3125-DRM, 2026 WL 2017470, at *4 (D. Md. Jul. 13, 2026); *see also Nicka D. v. Bisignano*, No. DRM-25-3053, 2026 WL 1855652, at *2 (D. Md. June 27, 2026) ("work requiring a specific production rate, such as assembly line work or work that requires hourly quotas"); *Mark M. v. Bisignano*, No. EA-24-3738, 2026 WL 739424, at *7 (D. Md. Mar. 16, 2026); *Alkein C. v. Bisignano,* No. TJS-25-1310, 2026 WL 1266164, at *1 (D. Md. May 8, 2026).

Seeing that the ALJ posed the precise hypothetical foreclosed by the opinions above, I will reverse the case for further proceedings consistent with the standards set forth in this Opinion. This Opinion has no bearing on whether the ultimate conclusion is correct.

## V.    Conclusion

In sum, the Court agrees with Plaintiff that the ALJ posed an improperly undefined hypothetical.  In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to an analysis at Step three, and the decision of the SSA is REMANDED for further proceedings in accordance with this Letter Order and Opinion.  In so holding, the Court expresses no opinion as to the validity of the ALJ's and Appeals Council's ultimate disability determination.  The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

6